# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

NATALIE A. CHAIREZ and
SAMANTHA G. CHAIREZ,

        Plaintiffs,

v.

AW DISTRIBUTING, INC., et al.,

        Defendants.

Case No. 20-CV-1473 (NEB/TNL)


ORDER ON MOTION TO DISMISS

In December 2017, while driving on Highway 10 in Sherburne County, Minnesota, a driver, allegedly high on dust remover spray, lost control of his vehicle. He crashed into a car carrying Natalie and Samantha Chairez, severely injuring them. The Chairezes brought this suit against the dust remover spray manufacturer, the manufacturer's subsidiaries, the owners of the manufacturer, and Walmart and some of its subsidiaries, alleging that they are liable for the crash and the resulting injuries. The dust remover spray manufacturer and its subsidiaries and owners moved to dismiss for lack of personal jurisdiction. For the reasons that follow, the Court denies their motion.

## BACKGROUND

Defendants AW Distributing, Inc., AW Product Sales & Marketing, Inc., AW & Ho (Holdings), Inc., Kennic Ho, and Alice Ho (collectively, "the AW Distributing

defendants")[1] sell a dust remover spray called Ultra Duster. (ECF No. 22 ("Am. Compl.") ¶¶ 13, 134.) Although dust remover products like Ultra Duster are meant to be sprayed on computer keyboards and other surfaces to dislodge and remove debris, people sometimes inhale these products to get high. (*Id.* ¶¶ 2, 28–36, 136.) The inhalation of dust remover can cause unconsciousness, drowsiness, dizziness, suffocation, and paralysis. (*Id.* ¶¶ 50–51.) Due to its intoxicating effects, inhaling the product before or while driving can lead to automobile crashes. (*E.g.*, *id.* ¶¶ 4, 65, 72–75.)

AW Distributing, Inc. entered into a distribution agreement with Walmart. (ECF No. 58-1.) Walmart required all suppliers of canned air products to include a bitterant (meant to cause a bitter taste) to discourage misuse like inhaling. (Am. Compl. ¶¶ 163–64.) Although Ultra Duster's label stated that it contained a bitterant, the Chairezes allege that the bitterant was either ineffective at deterring abuse or absent from the product altogether. (*Id.* ¶¶ 151, 160, 166–67.)

In December 2017, the Chairezes were traveling eastbound on Highway 10 in Sherburne County, Minnesota. (Am. Compl. ¶ 6.) Around the same time, a driver, who had allegedly been inhaling Ultra Duster, was driving westbound on Highway 10. (*Id.*)

---

[1] The latter four defendants were not named in the original Complaint but were added in Plaintiffs' Amended Complaint. (ECF No. 1; Am. Compl.) They accepted service after AW Distributing, Inc. filed its motion to dismiss, so the Court permitted the four new defendants additional time to respond to the Amended Complaint. (ECF Nos. 26, 38, 43.)

The driver lost control of his vehicle, crossed the median, and crashed into the Chairezes' vehicle, injuring them. (*Id.* ¶ 6, 201.)

The Chairezes then brought this suit, alleging that the AW Distributing defendants are liable for their injuries. (*See generally* Am. Compl.) Specifically, they allege that the AW Distributing defendants defectively designed and manufactured Ultra Duster, and that they failed to warn of the risks associated with using Ultra Duster while driving. (*Id.* ¶¶ 202–41.) They also bring claims for negligence, breach of express and implied warranties, public nuisance, and violation of several state statutes. (*Id.* ¶¶ 242–88.) AW Distributing, Inc. brought a motion to dismiss for lack of personal jurisdiction and failure to state a claim. (ECF No. 29 at 2.) AW Product Sales & Marketing, Inc., AW & Ho (Holdings), Inc., Alice Ho, and Kennic Ho later moved the Court to dismiss on the same bases. (ECF No. 42.) For the reasons that follow, the Court denies the motions.

## ANALYSIS

### I.     Personal Jurisdiction

The Court will not dismiss for lack of personal jurisdiction if the pleadings, viewed in the light most favorable to the Chairezes, are sufficient to support the exercise of jurisdiction over the AW Distributing defendants. *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015). The Chairezes must make a prima facie showing that the Court has jurisdiction over the AW Distributing defendants. *Viasystems, Inc. v. EBM-Papst St. Georgen GMBH & Co.*, 646 F.3d 589, 592 (8th Cir. 2011) (citation omitted).

The Court is not limited to the pleadings, and it may "inquire . . . into the facts as they exist." *Stevens v. Redwing*, 146 F.3d 538, 543 (8th Cir. 1998).

"A federal court in a diversity action may assume jurisdiction over nonresident defendants only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause." *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073 (8th Cir. 2004) (quotation omitted). Because Minnesota's long-arm statute permits the Court to exercise personal jurisdiction to the full extent that due process allows, the two prongs of the analysis collapse into a single inquiry: whether exercising personal jurisdiction over the AW Distributing defendants offends due process. *Pederson v. Frost*, 951 F.3d 977, 980 (8th Cir. 2020). To comport with due process, a non-resident defendant must have "minimum contacts" with the forum state such that exercising jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice. *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010) (citation omitted).

There are two types of personal jurisdiction: general and specific. *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal., S.F. Cnty.*, 137 S. Ct. 1773, 1779–80 (2017). For a corporation, general jurisdiction exists where the corporation is at home—usually where it is incorporated and where it is has its principal place of business. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). An individual is subject to general jurisdiction in the state where he or she is domiciled. *Viasystems*, 646 F.3d at 595 (citation omitted). The Chairezes do not argue that the Court has general jurisdiction over the AW

4

Distributing defendants, nor could it—AW Distributing and its subsidiaries are incorporated and have their principal places of business in California; Kennic Ho and Alice Ho are both California citizens. (Am. Compl. ¶¶ 9–12.)

Thus, specific jurisdiction is the inquiry, and the Court must determine if the AW Distributing defendants have "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427, 1431 (8th Cir. 1995) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (alteration original)). To assess whether a defendant has minimum contacts with the forum state, the Eighth Circuit uses a five-factor test—it looks to "(1) the nature and quality of defendant's contacts with the forum state; (2) quantity of contacts; (3) source and connection of the cause of action with those contacts; and to a lesser degree, (4) the interest of the forum state; and (5) the convenience of the parties." *Id.* at 1432 (footnote omitted).

The Chairezes rely mainly on a stream-of-commerce theory to support their specific jurisdiction argument. (ECF No. 57 at 14–22.) Unfortunately, there is no simple test or standard to determine when placing an object in the stream of commerce is sufficient to establish minimum contacts in the forum state. The Supreme Court first recognized the stream-of-commerce theory in *World-Wide Volkswagen Corp. v. Woodson*, when it noted that a company could be subject to personal jurisdiction in a state where it "delivers its products into the stream of commerce with the expectation that they will be

purchased by consumers in the forum State." 444 U.S. 286, 297–98 (1980) (citation omitted).

Most courts now follow one of two approaches outlined in *Asahi Metal Industry, Co. v. Superior Court of California*, 480 U.S. 102 (1987). A four-justice plurality, written by Justice O'Connor, stated that "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." *Id.* at 112. This has come to be known as the "stream of commerce plus" approach. Justice Brennan, writing for four other Justices, expressed what has been described as a more lenient view—that a court could exercise personal jurisdiction over a defendant when it is merely "aware that the final product is being marketed in the forum State." *Id.* at 117.

In 2011, the Supreme Court again considered the stream-of-commerce theory, and again the issue divided the Court. *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011). The plurality seemed to adopt Justice O'Connor's view, explaining that the defendant's knowledge that their product may reach the forum state is not enough, by itself, for the forum state court to exercise personal jurisdiction over the defendant. *Id.* at 882. The plurality also noted that Justice Brennan's more lenient approach is "inconsistent with the premises of lawful judicial power." *Id.* at 883.

The Eighth Circuit has not clearly adopted either approach. In *Falkirk Mining Co. v. Japan Steel Works, Ltd.*, the Eighth Circuit, applying Justice O'Connor's more restrictive

approach, held that the "plac[ing] of a product into the stream of commerce, without more, does not constitute an act of the defendant purposefully directed toward the forum State," and cannot support the exercise of personal jurisdiction over the defendant. 906 F.2d 369, 376 (8th Cir. 1990) (citation omitted). Several years later, though, the Eighth Circuit seemed to apply Judge Brennan's approach. *See Barone v. Rich Bros. Interstate Display Fireworks Co.*, 25 F.3d 610, 614 (8th Cir. 1994) (noting that in *Asahi*, "five justices agreed that continuous placement of a significant number of products into the stream of commerce with knowledge that the product would be distributed into the forum state represents sufficient minimum contacts to satisfy due process"). Later, in *Vandelune v. 4B Elevator Components Unlimited*, 148 F.3d 943 (8th Cir. 1998), the Eighth Circuit explained that it is still an "open question" whether Justice O'Connor's or Justice Brennan's approach in *Asahi* is correct. *Id.* at 947–48. The Eighth Circuit did not need to resolve this "open question" in *Vandelune*, because the defendant had enough additional contacts with the state such that personal jurisdiction would have been appropriate under either approach.[2] *See id.* at 948 (listing the defendant's contacts with the forum state).

_____

[2] One court in this Circuit has stated that the stream-of-commerce theory of specific jurisdiction did not survive the Supreme Court's decision in *Bristol-Myers Squibb*. *See A.T. ex rel. Travis v. Hahn*, 341 F. Supp. 3d 1031, 1037–39 (E.D. Mo. 2018). Neither party explicitly makes this argument, and the Court is not persuaded by the reasoning in *Hahn* in any event. The Supreme Court's opinion in *Bristol-Myers Squibb* did not mention the stream-of-commerce theory, and the Court was clear that it did not announce a new rule, but instead applied "settled principles of personal jurisdiction." 137 S. Ct. at 1783. Numerous courts have concluded that *Bristol-Myers Squibb* did not affect the viability of the stream-of-commerce theory. *E.g.*, *LLOG Expl. Co. v. Fed. Flange, Inc.*, No. 17-2323, 2019

As in *Vandelune*, this Court need not determine which approach the Eighth Circuit would take; at this point jurisdiction is proper under either approach. The AW Distributing defendants' actions certainly satisfy the more lenient approach because they continually placed their products into the stream of commerce with knowledge that they would be distributed nationwide. (Am. Compl. ¶ 25; ECF No. 58-1); *Barone*, 25 F.3d at 614; *Asahi*, 480 U.S. at 117 (Brennan, J., concurring in part and concurring in the judgment). Whether this knowledge is actual or constructive is immaterial. *See Clune v. Alimak AB*, 233 F.3d 538, 544 (8th Cir. 2000) (citing *Barone*, 25 F.3d at 613 & n.4) (explaining that the distinction between what the defendant knew and what it should have known is immaterial for stream of commerce analysis). By signing a distributor agreement with Walmart and subsequently selling, on average, tens of thousands of cans of Ultra Duster each week, the AW Distributing defendants at the very least should have known that Walmart was distributing its product nationwide, including to Minnesota.[3] (ECF Nos. 58-1, 58-2.) The AW Distributing defendants, then, could reasonably have expected to be haled into a Minnesota court. *Barone*, 25 F.3d at 615.

---

WL 4038599, at *5–6 (E.D. La. Aug. 28, 2019); *Kimmons v. AutoZone, Inc.*, No. 4:19-cv-00876-LPR, 2020 WL 5506446, at *6 n.46 (E.D. Ark. Sept. 11, 2020); *Slyce Acquisition Inc. v. Syte-Visual Conception Ltd.*, 422 F. Supp. 3d 1191, 1201 (W.D. Tex. 2019); *Semcon IP Inc. v. TCT Mobile Int'l Ltd.*, No. 2:18-CV-00194-JRG, 2019 WL 2774362, at *2–3 (E.D. Tex. July 2, 2019).

[3] The distribution agreement that the Chairezes submitted is more than a decade old, but it is reasonable to infer from the complaint that AW Distributing continued to distribute Ultra Duster through Walmart at the time of the crash. (Am. Compl. ¶¶ 20, 22.)

The AW Distributing defendants' actions also meet the more restrictive approach. In general, the "something more" required under this approach must be something the defendant did that indicates that it had an "intent or purpose to serve the market in the forum State." *Asahi*, 480 U.S. at 111–12 (plurality opinion). Examples of "something more" include designing the product specifically for the forum state market, advertising in the forum state, establishing channels for providing regular advice to customers in the forum state, or selling the products through a distributor who agreed to serve as the defendant's sales agent in the forum state. *Id.* The Chairezes have not only alleged that the AW Distributing defendants placed Ultra Duster in the stream of commerce, but also that it specifically targeted the sale of Ultra Duster to citizens of Minnesota and that it has advertised in the state. (Am. Compl. ¶¶ 25–26.) Additionally, AW Distributing has used a distributor, Walmart, to sell to Minnesota consumers. (*Id.* ¶ 25; ECF Nos. 58-1, 58-2.) These connections support the inference that the AW Distributing defendants have "purposefully avail[ed]" themselves of the privilege of selling their products in Minnesota, so requiring them to defend themselves in Minnesota does not offend due process. *E.g.*, *World-Wide Volkswagen*, 444 U.S. at 297; *see State Farm Fire & Cas. Co. v. BMC USA Corp.*, No. 16-CV-1793 (JRT/TNL), 2017 WL 4325693, at *4 (D. Minn. Sept. 27, 2017) (exercising personal jurisdiction over defendants based on the stream-of-commerce theory when defendant's product arrived in Minnesota as part of the "regular course" even though defendant did not utilize a "strategically placed" network of distributors)

(first quoting *Nicastro*, 564 U.S. at 888–89; then quoting *Barone*, 25 F.3d at 613–15; internal quotation marks omitted).

Whether the Chairezes meet the more restrictive approach is admittedly a closer call. But at this stage, the Chairezes need only make a prima facie case showing jurisdiction, which is minimal. *Viasystems*, 646 F.3d at 592; *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010). Further, the Court must view the evidence in the light most favorable to the Chairezes. *Viasystems*, 646 F.3d at 592. Later in the case, the Chairezes will have to establish the propriety of personal jurisdiction by a preponderance of the evidence, but at this early juncture, through their allegations, the supplier agreement, and the nationwide net sales sheet, the Chairezes have made a prima facie case that the AW Distributing defendants have done more than just put their products in the stream of commerce. *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 647 (8th Cir. 2003) ("While the plaintiffs bear the ultimate burden of proof, jurisdiction need not be proved by a preponderance of the evidence until trial or until the court holds an evidentiary hearing.").

Several courts have similarly concluded that a manufacturer who sells its products through a nationwide retailer is subject to personal jurisdiction in a state where the retailer sells its products. *See, e.g.*, *McGinley v. Luv N' Care, Ltd.*, No 16-00283-CV-W-DW, 2017 WL 2729113, at *3 (W.D. Mo. Feb. 17, 2017) (applying the stream-of-commerce theory and concluding that the court had personal jurisdiction over a manufacturer that sold its

products through nationwide retailers), *modified on other grounds by* 2017 WL 2729101 (W.D. Mo. June 23, 2017); *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 474 (5th Cir. 2006) (noting that "it is not unreasonable to ask [the defendant] to defend in Louisiana, where the company avails itself of the benefit of that state's market for thousands of iterations of its product" when the defendant sold its products through Walmart); *Kernius v. Int'l Elecs., Inc.*, 433 F. Supp. 2d 621, 627 (D. Md. 2006) ("A corporation cannot sell its products to national retailers such as RadioShack, Best Buy, Target, and Wal–Mart and then claim that it is surprised to be haled into court in a particular State because, to the best of the corporation's knowledge, it was not specifically aware that its products were actually sold or used in that State.").[4]

Even courts in "stream of commerce plus" circuits have determined that selling products through a nationwide retailer can support a finding of personal jurisdiction. *See, e.g.*, *Hilsinger Co. v. FBW Invs.*, 109 F. Supp. 3d 409, 425–29 (D. Mass. 2015) (determining that by selling to nationwide retailers, the defendant was targeting the states in which the retailer operated, which established the "something more").

---

[4] One court in this District reached a contrary conclusion on somewhat similar facts, but with little analysis. *See LeDuc Gifts & Specialty Prods., LLC v. New Thermo-Serv, Ltd.*, 382 F. Supp. 3d 885, 890–91 (D. Minn. 2019) ("[Defendant's] nationwide sales via third-party retailers, which might have included sales to Minnesota customers, are not sufficient minimum contacts.").

Because the Chairezes have made a prima facie case that the AW Distributing defendants are subject to personal jurisdiction in Minnesota, the Court will not dismiss them on this basis.

## II.    Failure to State a Claim

The AW Distributing defendants also move, in the alternative, to dismiss the Chairezes' claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF Nos. 29, 44.) Rule 12(b)(6) requires that the Court dismiss a complaint if it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When reviewing a Rule 12(b)(6) motion, a court must "tak[e] all facts alleged in the complaint as true, and mak[e] reasonable inferences in favor of the nonmoving party." *Smithrud v. City of St. Paul*, 746 F.3d 391, 397 (8th Cir. 2014). Although the factual allegations need not be detailed, they "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Thus, where a complaint alleges "facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief'" and the Court must dismiss it. *Id.* (quoting *Twombly*, 550 U.S. at 557).

### A.  Alter Ego

The AW Distributing defendants contend that the Court must dismiss Alice Ho and Kennic Ho because the Chairezes have not pled that they are individually liable. (ECF No. 46 at 18–26.) The Chairezes contend that the Hos are the alter ego of the other AW Distributing defendants. (Am. Compl. ¶¶ 17–19; ECF No. 57 at 27–29.) To prevail on an alter ego theory, a plaintiff must eventually show that several factors favor piercing the corporate veil and that piercing the veil is necessary to avoid injustice or unfairness. *Urban ex rel. Urban v. Am. Legion Post 184*, 695 N.W.2d 153, 161–62 (Minn. Ct. App. 2005) (citation omitted) (holding that, to pierce the corporate veil, a plaintiff must establish "a number of" the factors laid out in *Victoria Elevator Co. v. Meriden Grain Co.*, 283 N.W.2d 509 (Minn. 1979)). But a plaintiff need not make this showing at the motion to dismiss stage. To survive a motion to dismiss an alter ego claim, a plaintiff need only give notice of the theory under which it plans to proceed and its intent to pierce the corporate veil. *Damon v. Groteboer*, No. 10-CV-92 (JRT/FLN), 2011 WL 886132, at *6 (D. Minn. Mar. 14, 2011); *see Barton v. Moore*, 558 N.W.2d 746, 749 (Minn. 1997) ("Because the lenders challenge the trial court's Rule 12 dismissal on the basis of the pleadings, the *Victoria Elevator* test must be considered in the context of pleading requirements in Minnesota."). This requirement is not a formal one—a plaintiff need not deliver a separate notice to a defendant that it seeks to proceed on an alter ego theory; a simple allegation in the pleading that one defendant is the alter ego of another suffices. *Damon*, 2011 WL 886132,

at *6; *Ward v. Shad*, No. 18-CV-1933 (NEB/ECW), 2019 WL 1084219, at *5 (D. Minn. Mar. 7, 2019) (collecting cases).

The Chairezes have sufficiently alleged that Alice Ho and Kennic Ho are the alter egos of AW Distributing. They have alleged that Alice Ho and Kennic Ho were the sole shareholders of the AW Distributing companies, that they so controlled the companies as to consider them their alter egos, and that they have co-mingled assets. (Am. Compl. ¶ 17.) These allegations are sufficient to survive a motion to dismiss.

## B. *Strict Liability and Negligence Claims*

The AW Distributing defendants claim that the Chairezes' strict liability and negligence claims should be dismissed because the AW Distributing defendants did not owe the Chairezes a duty. The AW Distributing defendants also argue that they did not have a duty to warn of obvious dangers, and their actions were not the proximate cause of the Chairezes' injuries.

### 1. *Duty*

Generally, one does not owe a duty to another person when a third party causes the harm. *Fenrich v. The Blake Sch.*, 920 N.W.2d 195, 201 (Minn. 2018) (citation omitted). There are two exceptions to this rule. First, where there is a special relationship between the plaintiff and the defendant and the harm was foreseeable. *Id.* at 201–02 (citation omitted). This exception is inapplicable because the Chairezes have not alleged that there is a special relationship between them and the AW Distributing defendants.

14

The second exception is where "'the defendant's own conduct creates a foreseeable risk of injury to a foreseeable plaintiff.'" *Id.* at 202 (citing *Domagala*, 805 N.W.2d at 23). For this exception, the Chairezes must have alleged that: (1) the AW Distributing defendants' own conduct; (2) "created a foreseeable risk"; and (3) that the Chairezes were foreseeable plaintiffs. *Id.* at 203.

As for the first prong, the "own conduct" requirement is satisfied when the defendant engaged in misfeasance, but not when it is guilty of "mere nonfeasance." *Diehl v. 3M Co.*, No. A19-0354, 2019 WL 4412976, at *2 (Minn. Ct. App. Sept. 16, 2019) (citing *Fenrich*, 920 N.W.2d at 203). "Misfeasance is active misconduct working positive injury to others. Nonfeasance is passive inaction or a failure to take steps to protect [others] from harm." *Fenrich*, 920 N.W.2d at 203 (internal quotations and citations omitted). The Chairezes have alleged that the AW Distributing defendants engaged in misfeasance. The Chairezes allege that, despite knowing of the dangers of Ultra Duster and failing to mitigate those dangers, the AW Distributing defendants designed, manufactured, marketed, and sold Ultra Duster. (Am. Compl ¶¶ 134, 136, 142–43, 145, 147, 153–63); *see Diehl*, 2019 WL 4412976, at *3 (explaining the own-conduct exception applies if the defendant's "own conduct of manufacturing and selling the product created a foreseeable risk of injury" to the plaintiff). These allegations go beyond "passive inaction"—the Chairezes have alleged that the AW Distributing defendants took active steps that "work[ed] positive injury to others." *Fenrich*, 920 N.W.2d at 203 (citation omitted).

Similarly, the Chairezes have alleged that the AW Distributing defendants' conduct "created a foreseeable risk to a foreseeable plaintiff." *Id.* at 205. For a risk to be foreseeable, it must have been "objectively reasonable to expect," not merely "within the realm of any conceivable possibility." *Id.* (quoting *Foss v. Kincade*, 766 N.W.2d 317, 322 (Minn. 2009)). A risk of harm that is "remote or attenuated" will not suffice to establish foreseeability. *Id.* at 206. The Chairezes have alleged that the harm here was "objectively reasonable to expect." *Foss*, 766 N.W.2d at 322. The dangers posed by the misuse of computer duster spray while driving are well-known—there have been numerous reports of drivers losing control of their vehicles and crashing while high on computer duster spray. (*E.g.*, Am. Compl. ¶¶ 72–75, 84–85); *Diehl*, 2019 WL 4412976, at *4 (concluding that it was foreseeable that the defendant would misuse dust remover and become intoxicated while driving). The Chairezes have also alleged that the AW Distributing defendants knew of these risks. (*Id.* ¶¶ 143–44.) Finally, the Chairezes have alleged that it was reasonably foreseeable that they would be injured by the AW Distributing defendants' misfeasance. (*Id.* ¶¶ 216, 229, 244.) Because the Chairezes have adequately alleged that the "own conduct" exception applies, and thus that the AW Distributing defendants owed them a duty, the Court will not dismiss their strict liability claims for a lack of duty.

2. *Duty to Warn of Obvious Dangers*

A manufacturer has a duty to warn of a risk posed by its product when the risk is "direct and is the type of occurrence that was or should have been reasonably foreseeable," but not when the risk is "too remote." *Germann v. F.L. Smithe Mach. Co.*, 395 N.W.2d 922, 924 (Minn. 1986). Similarly, a manufacturer does not have a duty to warn of obvious dangers. *Hoeg v. Shore-Master, Inc.*, No. C9-94-508, 1994 WL 593919, at *1 (Minn. Ct. App. Nov. 1, 1994) (citing *Westerberg v. Sch. Dist. No. 792*, 148 N.W.2d 312, 316 (Minn. 1967)). For example, there is no duty to warn that "an axe will cut, a match will take fire, dynamite will explode, or a hammer may mash a finger." *Peppin v. W.H. Brady Co.*, 372 N.W.2d 369, 375 (Minn. Ct. App. 1985) (quotation omitted).

Viewing the allegations in the light most favorable to the Chairezes, they have alleged that the risk of driving while high on computer duster was not so obvious that the AW Distributing defendants did not need to warn of it. The Chairezes have alleged that using Ultra Duster while driving is dangerous, and that the AW Distributing defendants did not warn of this risk. Additionally, there are no allegations in the Complaint that the driver who caused the crash knew of the risks of driving while high on Ultra Duster. From these allegations, the Court can (and therefore must) draw the "reasonable inference" that this risk was nonobvious to Ultra Duster users. *Smithrud*, 746 F.3d at 397.

17

The AW Distributing defendants claim that the risks of using Ultra Duster while driving cannot be both predictable and foreseeable, as the Chairezes claim, and also so non-obvious as to require a warning. But just because the Chairezes have alleged that the AW Distributing defendants were aware of the risks of using Ultra Duster while driving does not necessarily mean that the driver was also aware of those risks, or that those risks would have been obvious to him. Whether a defendant owes a duty to a plaintiff depends on whether the harm was foreseeable; on the other hand, whether the risk was obvious depends on whether it was obvious to the user. *See Minneapolis Soc'y of Fine Arts v. Parker-Klein Assocs. Architects, Inc.*, 354 N.W.2d 816, 821 (Minn. 1984) (noting that there is generally no duty to warn if the user knew or should have known of the dangers), *overruled on other grounds by Hapka v. Paquin Farms*, 458 N.W.2d 683 (Minn. 1990).

3. *Proximate Cause*

To prevail on their strict liability claims, the Chairezes must show that Ultra Duster's defects and the AW Distributing defendants' failure to warn caused their injuries. *Duxbury v. Spex Feeds, Inc.*, 681 N.W.2d 380, 393 (Minn. Ct. App. 2004) (citation omitted); *Tuttle v. Lorillard Tobacco Co.*, 377 F.3d 917, 924–25 (8th Cir. 2004) (citing Minnesota law).

To survive a motion to dismiss their product defect claims, the Chairezes must allege that Ultra Duster's defects were the proximate cause of their injuries, meaning that "the consequences naturally follow in unbroken sequence without an intervening cause"

or that the AW Distributing defendants' conduct was "a substantial factor in bringing about the harm." *Laubach v. Isaacson*, No. C0-91-1984, 1992 WL 31367, at *2 (Minn. Ct. App. Feb. 25, 1992) (first citing *Haugen v. Dick Thayer Motor Co.*, 91 N.W.2d 585, 589 (Minn. 1958); then citing *Flom v. Flom*, 291 N.W.2d 914, 917 (Minn. 1980)). Proximate causation is ordinarily a question of fact, but when "reasonable minds can arrive at only one conclusion" it can be decided as a matter of law. *Lubbers v. Anderson*, 539 N.W.2d 398, 402 (Minn. 1995) (citation omitted).

The Chairezes have adequately alleged that Ultra Duster's defects were the proximate cause of their injuries. Specifically, they have alleged that the AW Distributing defendants' failure to include a bitterant led to a driver getting high from inhaling Ultra Duster, which in turn caused the crash. (*E.g.*, Am. Compl. ¶¶ 159–79, 201–230.) The Chairezes have also alleged that the AW Distributing defendants failed to warn of the risks associated with using Ultra Duster while driving, so the driver inhaled Ultra Duster while driving, which then led to the crash. (Am. Compl. ¶¶ 156–58, 201, 241.)

The Court cannot conclude, on a motion to dismiss, that the driver's choice to inhale Ultra Duster before driving was a superseding cause that broke the chain of causation. For an action to be a superseding cause of harm, it must satisfy four elements:

> 1) its harmful effects must have occurred after the original negligence; 2) it must not have been brought about by the original negligence; 3) it must have actively worked to bring about a result which would not otherwise have followed from the original negligence; and 4) it must not have been reasonably foreseeable by the original wrongdoer.

*Can. ex rel. Landy v. McCarthy*, 567 N.W.2d 496, 507 (citation omitted). The Chairezes have alleged facts that show that the driver's actions do not meet the second and fourth elements. They have alleged that the driver's use of Ultra Duster while driving was "brought about" by Ultra Duster's defects and the AW Distributing defendants' failure to warn, and that such misuse would have been foreseeable to the AW Distributing defendants. (Am. Compl. ¶¶ 143, 157, 201, 216, 229, 240–41.)

### C. Breach of Warranty Claims

#### 1. Breach of Express Warranty

To establish a breach of an express warranty, the Chairezes must show: "the existence of a warranty, a breach, and a causal link between the breach and the alleged harm." *Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co.*, 848 N.W.2d 539, 544 n.6 (Minn. 2014) (citation omitted). A warranty extends to anyone who could "be affected by the goods and who is injured by breach of the warranty." Minn. Stat. § 336.2-318. It is unclear whether Minnesota still requires the plaintiff to prove reliance on the warranty. *See Lyon*, 848 N.W.2d at 544 n.6 (noting that although the Minnesota Supreme Court had previously recognized reliance as an element of a breach of warranty claim in a 1974 case, a subsequent Minnesota Supreme Court case did not discuss reliance); *Krause v. City of Elk River*, No. A14-1575, 2015 WL 3823093, at *3 (Minn. Ct. App. June 22, 2015) (refusing to require proof of reliance because several Minnesota Supreme Court cases had not included it as an element of a breach of warranty claim). Regardless of whether reliance

is a required element, the Chairezes have adequately alleged it here. (*See* Am. Compl. ¶ 253.)

### 2. *Breach of Implied Warranty*

The AW Distributing defendants claim that the Court should dismiss Chairezes' breach of implied warranty claim because it merges with their strict liability claims. (ECF No. 31 at 28.) These claims are typically merged at trial, not before. *See In re Shigellosis Litig.*, 647 N.W.2d 1, 11 (Minn. Ct. App. 2002) (citation omitted) (addressing merger in the context of jury instructions); *Driscoll v. Standard Hardware, Inc.*, 785 N.W.2d 805, 815 (Minn. Ct. App. 2010) (citation omitted) (noting that the Minnesota Supreme Court has merged the two theories when addressing jury instructions). The purpose of merging these claims is to avoid confusing the jury, and this purpose would not be served by merging the claims at the motion to dismiss stage. *In re Shigellosis*, 647 N.W.2d at 11.

### D. **State Statutory Claims**

The AW Distributing defendants argue that the Court should dismiss the Chairezes' state statutory claims for failing to allege public benefit and proximate causation. They also claim that the Deceptive Trade Practices Act claim should be dismissed because the Chairezes have not alleged future harm.

1. *Public Benefit*

The Chairezes bring all but one of their state statutory claims under the Minnesota Private Attorney General Act.[5] (Am. Compl. ¶ 268); Minn. Stat. § 8.31, subd. 3a. To maintain a suit under this provision, the plaintiff must show that her suit would provide a public benefit. *Ly v. Nystrom*, 615 N.W.2d 302, 314 (Minn. 2000). A suit benefits the public when it seeks to address misrepresentations that the defendant has made "to the public at large" and when the defendant's product or service is offered to the general public. *Collins v. Minn. Sch. of Bus., Inc.*, 655 N.W.2d 320, 330 (Minn. 2003). On the other hand, a suit stemming from the defendant defrauding a single customer in a one-off transaction does not benefit the public. *Ly*, 615 N.W.2d at 314; *Jensen v. Duluth Area YMCA*, 688 N.W.2d 574, 578 (Minn. Ct. App. 2004). The Chairezes have alleged that their suit will benefit the public; drivers inhaling dust remover spray and crashing is a nationwide problem that the Chairezes' suit seeks to address. (*E.g.*, Am. Compl. ¶¶ 65, 72–75.) Additionally, this is more than a single, one-off transaction; the AW Distributing defendants distribute Ultra Duster to all fifty states. (*Id.* ¶ 25.)

2. *Proximate Cause*

The Chairezes must also plead a causal connection between the AW Distributing defendants' alleged violation of the state statutes and their injuries. *Grp. Health Plan, Inc.*

---

[5] The deceptive trade practices statute provides its own right of action. Minn. Stat. § 325D.45; *Alsides v. Brown Inst., Ltd.*, 592 N.W.2d 468, 475 (Minn. Ct. App. 1999)

*v. Philip Morris Inc.*, 621 N.W.2d 2, 13, 15 (Minn. 2001). The Chairezes have adequately alleged that the AW Distributing defendants' misleading and deceptive warnings on Ultra Duster's label proximately caused their injuries. (Am. Compl. ¶¶ 156–58, 160–66, 201, 274.)

### 3. Future Harm

An injunction is the only available remedy for the Chairezes' Deceptive Trade Practices Act claim, *Alsides*, 592 N.W.2d at 476, so they must show a "likelihood of future damage." *Lofquist v. Whitaker Buick-Jeep-Eagle, Inc.*, No. C5-01-767, 2001 WL 1530907, at *2 (Minn. Ct. App. Dec. 4, 2001). The Chairezes have alleged that, unless enjoined, the AW Distributing defendants' deceptive trade practices will continue, and similar accidents will happen in the future. (Am. Compl. ¶ 287.) While the allegations of future harm are thin, consideration of this issue is in this case more appropriate for summary judgment. *See, e.g.*, *Damon v. Groteboer*, 937 F. Supp. 2d 1048, 1070–71 (D. Minn. 2013).

### E. *Public Nuisance Claim*

Ordinarily, only the state may bring a public nuisance claim, except in instances where a private plaintiff "has suffered some special or peculiar damage not common to the general public." *Moore v. Fletcher*, No. A16-1922, 2017 WL 3863835, at *2 (Minn. Ct. App. Sept. 5, 2017) (citing *Hill v. Stokely-Van Camp, Inc.*, 109 N.W.2d 749, 753 (Minn. 1961)). The Chairezes have alleged that AW Distributing's conduct has created a public nuisance,

which has proximately caused them special and peculiar damages. (Am. Compl. ¶¶ 281–82, 284–85, 288.)

AW Distributing argues that the Court should not recognize a public nuisance claim in this context because the Eighth Circuit has cautioned against the expansion of the doctrine. (ECF No. 31 at 34 (citing *Tioga Pub. Sch. Dist. No. 15 v. U.S. Gypsum Co.*, 984 F.2d 915, 921 (8th Cir. 1993) (applying North Dakota law)).) But in this diversity case, the Court must follow Minnesota law, not the Eighth Circuit's application of North Dakota law. *See Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 856 (8th Cir. 2010) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). The Court will not dismiss the claim at this juncture.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, Defendants AW Distributing, Inc., AW Product Sales & Marketing, Inc., AW & Ho (Holdings), Inc., Alice Ho, and Kennic Ho's motions to dismiss (ECF Nos. 29, 44) are DENIED.


Dated: April 23, 2021                              BY THE COURT:

                                                   s/Nancy E. Brasel
                                                   Nancy E. Brasel
                                                   United States District Judge

24