UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| NATALIE A. CHAIREZ, SAMANTHA G. CHAIREZ, | Case No. 20-CV-1473 (NEB/JFD) |
| Plaintiffs, | |
| v. | ORDER |
| AW DISTRIBUTING, INC., WALMART STORES, INC., WALMART, INC., WAL-MART STORES EAST, LP, WAL-MART STORES EAST, LLC, JOHN DOE *Company Defendants #1-10,* AW PRODUCT SALES & MARKETING, INC., AW & HO (HOLDINGS), INC., ALICE HO, KENNIC HO, | |
| Defendants. | |

This case is before the Court on Defendant Walmart's Motion for a Protective Order (Dkt. No. 140) and Plaintiffs' Motion to Compel and for Sanctions (Dkt. No. 146). The case has been referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. The Court held a motions hearing on December 13, 2022, where Ms. Kaylin Schmidt and Ms. Rose Jones represented Walmart and Mr. David Bland and Ms. Rashanda Bruce represented Plaintiffs. (Hr'g Minutes, Dkt. No. 171.) The Court grants, as modified, Defendant Walmart's Motion for a Protective Order and grants in part and denies in part Plaintiffs' Motion to Compel.

I.  BACKGROUND

After allegedly being injured in a car crash caused by a driver who was intoxicated

from inhaling gas from a canister of a product called "Ultra Duster," Plaintiffs brought a products liability suit against the product's manufacturers and distributors, including Walmart. (Amended Compl. Dkt. No. 22.) Ultra Duster is a cleaning product that blows pressurized gas out of a container, removing dust from computer keyboards and surfaces. (Compl. ¶¶ 2–6.) Such products are often referred to as "canned air," "keyboard cleaners," or "dust removers." *McDougall v. CRC Indus. Inc.*, 523 F. Supp. 3d 1061, 1068 (D. Minn. 2021). Because the gas in these products can contain a central nervous system depressant called difluoroethane, some people inhale the gas (called "huffing") to get high. *Id.* The parties have been in discovery since June 2021. (*See* Pretrial Scheduling Order, Dkt. No. 76.)

      A.      **Motion for Protective Order**

Walmart seeks a protective order that excuses the parties from producing "non-relevant attachments that are attached to relevant emails" and allows parties to unilaterally redact the following information from their disclosures:

> (1) information that is privileged or protected from discovery as work product or by reason of any other applicable privilege or immunity; (2) information subject to non-disclosure obligations imposed by governmental authorities, law or regulation (e.g., protected personal information); and (3) sensitive, non-relevant information, including but not limited to personally identifiable information, trade secrets, or information regarding products, data, or people.

(Walmart's Proposed Protective Order, Dkt. No. 145, at 2.)

Walmart has already been redacting information from its discovery disclosures. (Schmidt Decl. ¶¶ 3, 14, Dkt. No. 143 (describing serving documents with "non-responsive redactions" which removed "proprietary commercial data" about Walmart products besides Ultra Duster.); Rebers Decl. ¶¶ 3–12, Dkt. No. 162 (claiming redactions were of

2

"safeguarded" or "confidential and commercially sensitive" information that, if released, would harm Walmart).) Plaintiffs state that they complained to Walmart about the redactions when they were made (Bland Decl. ¶¶ 17–19, Dkt. No. 150) and that they now object to Walmart's motion for a protective order because Walmart failed to meet and confer with Plaintiffs before bringing the motion, as required by Local Rule 7.1 of the District of Minnesota (Pls.' Mem. Opp'n Mot. Protective Order at 1–2, Dkt. No. 153). Plaintiffs argue that they are not seeking unredacted versions of documents containing thousands of lines of data on products unrelated to Ultra Duster ("the spreadsheet documents"), but that they do want to see unredacted copies of "emails, memos, and other documents that are not spreadsheets" ("the non-spreadsheet documents"). (*Id.* at 2–3.)

B.  **Motion to Compel**

After Walmart filed its motion for a protective order, Plaintiffs filed a motion to compel Walmart to respond to Plaintiffs' Request for Production ("RFP") 34 and to disclose unredacted copies of the discovery productions described above. (Pls.' Mem. Supp. Mot. Compel at 1, Dkt. No. 148.) RFP 34 demands "[a]ll documents [Walmart] produced in *Kelley v. AW Distributing, Inc.*, Case No. 4:20-CV-06942-JSW, currently pending in the United States District Court for the Northern District of California." (Brandt Decl. Ex. G at 2, Dkt. No. 113-7.) *Kelley* is a case similar to this one, in that it is a products liability action against Walmart and others, alleging that a driver caused a crash in which the *Kelley* plaintiffs were injured because the driver had inhaled gas from a can of Ultra Duster that he bought at Walmart. First Am. Compl. at ¶ 4, *Kelley v. AW Distrib., Inc.*, No. 20-CV-6942 (JSW) (N.D. Cal. May 10, 2021), Dkt. No. 100. At the hearing on Plaintiffs' previous motion

3

to compel regarding RFP 34, this Court ordered Walmart to produce the same documents it produced in *Kelley v. AW Distributing, Inc.* if they (1) relate to Ultra Duster and (2) are from 2008 through 2018. (Tr. of June 21, 2022 Mot. Hr'g ("Tr.") 39:9–41:4). Walmart made five additional disclosures to Plaintiffs after that ruling. (Schmidt Decl. ¶¶ 7–8, Dkt. No. 143.)

Counsel for Plaintiffs in this case is also counsel for the plaintiffs in *Kelley* (Bland Decl. ¶ 1) and he argues that Walmart failed to produce 4,141 documents from the *Kelley* litigation that meet the Court's criteria for disclosure in this case (Pls.' Mem. Supp. Mot. Compel at 5). Walmart disagrees. (Walmart's Mem. Opp'n Mot. Compel at 13–15; 17–22.) Walmart replies that "if documents produced in *Kelley* relate to Ultra Duster, are within 2008 and 2018, and are responsive to Plaintiffs' requests for production in this case, then they should be produced, and they have." (*Id.* at 9.) Walmart further argues that it need not produce a case file that it was ordered to produce in *Kelley*—the litigation file in *Grieco v. Merrill*, No. 50-2012-CA-021342-MB(AD), 2017 WL 11588163, a state court case from Florida—because this Court did not require Walmart to disclose case files from other litigation. (*Id.* at 14–15 (citing Tr. 36:19–25, 37:4–8).)

**II.    GOVERNING LAW**

Parties in civil cases can discover nonprivileged information "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The requesting party has the burden of showing the information's relevance. *Sherman v. Sheffield Fin., LLC*, 338 F.R.D. 247, 252 (D. Minn. Apr. 26, 2021) (citing *Hofer v. Mack Trucks*, Inc., 981 F.2d 377, 380 (8th Cir. 1992)). Then, "the party resisting production bears the burden of establishing lack of relevancy or undue burden." *Inline Packaging, LLC v. Graphic Packaging Int'l, Inc.*, No. 15-CV-3183

4

(ADM/LIB), 2016 WL 6997113, at *7 (D. Minn. Sept. 6, 2016) (quoting *Saint Paul Reinsurance Co. v. Com. Fin. Corp.*, 198 F.R.D. 508, 511 (N.D. Iowa Nov. 22, 2000)). This is a broad disclosure standard but it is not boundless; parties can discover only that information which is "proportional to the needs of the case," considering "the importance of the issues," "the amount in controversy," "the parties' relative access to relevant information," their resources, how important the discovery is in resolving the issues, and "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). When a requesting party believes its discovery requests are relevant and proportional, but a responding party has failed to provide the requested information, the requesting party may make a motion to compel the responding party's production. Fed. R. Civ. P. 37(a)(3), (5). If a party prevails in their motion to compel, the court must award them expenses unless the moving party failed to meet and confer, the opposing party's conduct was "substantially justified," or if it would be otherwise unjust to order expenses. Fed. R. Civ. P. 37(a)(5).

As this Court noted in *Target Corporation v. ACE American Insurance Company*, a responding party may not unilaterally redact information from responsive documents. 576 F. Supp. 3d 609, 620 (D. Minn. 2021); *see also Bartholomew v. Avalon Capital Grp.*, 278 F.R.D. 441, 451, 452 (D. Minn. Apr. 28, 2011) (explaining the practice has no basis in the federal rules and noting that the rules only discuss redaction in documents filed with courts). Instead, a responding party must formally object to the request or move for a protective order. *Hageman v. Accenture, LLP*, No. 10-CV-1759 (RHK/TNL), 2011 WL 13136510 at *4 (D. Minn. June 7, 2011); *Bartholomew*, 278 F.R.D. at 452. A court can enter a protective

5

order to protect a person from "annoyance, embarrassment, oppression, or undue burden or expense," if it finds good cause. Fed. R. Civ. P. 26(c)(1). Among other things, protective orders can prohibit the disclosure of trade secrets, limit the scope of discovery, and allow for redactions. *See, e.g.*, Fed. R. Civ. P. 26(c)(1)(A), (G); *Hageman*, 2011 WL 13136510 at *4.

The party opposing the discovery of confidential business information bears the burden of showing that the information is covered by Rule 26(c)(7) and that disclosing it would harm the party's property interest in that information. *In re Remington Arms Co., Inc.*, 952 F.2d 1029, 1032 (8th Cir. 1991) (citing Fed. R. Civ. P. 26(c)(7) (authorizing courts to protect litigants from the disclosure of their trade secrets or confidential "research, development, or commercial information")). If the party opposing discovery meets their initial burden, the party seeking discovery must show that the information is "relevant to the subject matter of the lawsuit and is necessary to prepare the case for trial." *Id.* Allocation of costs for a motion for a protective order are governed by the same rule governing costs for motions to compel. Fed. R. Civ. P. 26(c)(3) (citing Fed. R. Civ. P. 37(a)(5)).

### III.  ANALYSIS

There are two motions before the Court. Walmart seeks a protective order and Plaintiffs seek unredacted discovery disclosures as well as certain documents from the *Kelley* litigation that Walmart has not disclosed. (Dkt. Nos. 140, 146.) The Court addresses the motions in the order in which they were filed.

####   A.  **Walmart's Motion for a Protective Order**

Before addressing the merits of Walmart's motion for a protective order, the Court will address Plaintiffs' objection that Walmart failed to meet and confer as required by Local

Rule 7.1(a) before filing its motion. At the motions hearing, the parties agreed that the day before Walmart filed its motion, counsel for Plaintiffs and counsel for Walmart met to discuss their disagreement regarding Walmart's unilateral redactions in their discovery productions. Counsel for Plaintiffs told the Court that counsel for Walmart never advised him that she intended to move for a protective order. Counsel for Walmart recalled that at the conclusion of the meeting, the parties agreed to file their respective motions on the issue of redaction. The Court concludes that the parties did discuss the merits of the issue now before the Court but that the discussion was far from what a meet and confer ought to be. The Court reiterates what it advised the parties at the motions hearing: the obligation to meet and confer before filing motions is a serious obligation. Not only is meeting and conferring a professional courtesy, but it is also a rule of the Court, and one with an important purpose. Meeting and conferring is "intended to lead to a meaningful, pre-motion-filing exchange of views between the parties to a lawsuit, and, if possible, to a full or partial resolution of the matter(s) that are the subject of a contemplated motion." *Marks v. Bauer*, No. 20-CV-1913 (ADM/JFD), 2021 WL 6050309, at *3 (D. Minn. Dec. 21, 2021) (quoting *Magistrate Judge John F. Docherty's Practice Pointers and Preferences*, https://www.mnd.uscourts.gov/judges-practice-pointers, at 3 (last visited Feb. 8, 2023)). The habit of meeting and conferring streamlines motion practice, which reduces the burden on the parties, counsel, and the courts.

    In its motion for a protective order, Walmart essentially seeks post hoc approval of its non-responsive redactions in discovery. Walmart argues that its "non-responsive redactions are only made for non-responsive, trade secret, non-public, proprietary, and competitively

7

sensitive commercial information" unrelated to Ultra Duster. (Walmart's Mem. Supp. Protective Order at 9.) Since the redacted material does not relate to Ultra Duster, Walmart claims it is not discoverable in the first instance (*id.*), but even if it is discoverable, most of the redactions are in spreadsheets that contain the sales and pricing information of "a vast number" of Walmart products (*id.* at 11). Because that information helps Walmart maintain the pricing that keeps it competitive in today's marketplace and is "not generally known," Walmart argues that its disclosure would give competitors an unfair advantage by providing them access to information that is "virtually impossible" to access in other ways. (*Id.* at 12–13.) Walmart seeks costs and attorney's fees associated with bringing their motion for a protective order. (Walmart's Mot. at 1.)

Plaintiffs argue that Walmart's unilateral redactions violate established procedures in this judicial district. (Pls.' Mem. Supp. Mot. Compel at 15–16.) They further suggest that granting Walmart's motion for a protective order will reward Walmart for this misconduct. (*Id.* at 17.) The parties agree that the spreadsheet documents are not relevant to the suit because they refer to products in the same department as Ultra Duster, but do not relate to Ultra Duster itself. (*See* Pls.' Mem. Opp'n Mot. Protective Order at 2–3.) Plaintiffs argue that most, if not all, of Walmart's arguments supporting a protective order apply to the *spreadsheet* documents (which Plaintiffs do not seek), but not to the *non-spreadsheet* documents (which Plaintiffs seek). (*Id.* at 4.) Plaintiff submitted seven examples of the redacted non-spreadsheet documents from Walmart, which the Court reviewed. (Bland Decl., Exs. C–I, Dkt. Nos. 155-1–6.) While some of the redactions are minimal (*see* Exs. C, D, E), others were significant, redacting the substance of entire emails (*see* Exs. F, G, H, I.)

8

Plaintiffs are correct that a party responding to discovery cannot unilaterally redact information from responsive documents. *Target Corp.*, 576 F. Supp. 3d at 620. The party that seeks to redact material must object to the discovery or move for a protective order. *Hageman*, 2011 WL 13136510 at *4. Walmart relies on the protective order in this case to justify its redactions but as the Court pointed out at oral argument, Walmart's reliance is misplaced because the protective order does not permit redactions for irrelevance or trade secrets, it only permits redactions for privilege. (*Compare* Walmart's Mem. Supp. Mot. Protective Order at 4 n.3 (citing ESI Protocol ¶ 6, Dkt. No. 80) *with* ESI Protocol (Dkt. Nos. 78, 82 ¶¶ 5–6).) Walmart does not claim to have redacted privileged information, but instead describes the redacted material as "confidential, proprietary, commercially sensitive trade secret information." (*See* Walmart's Mem. Supp. Mot. Protective Order at 1.) Such redactions are not permitted under the current protective order. Thus the two issues before the Court are whether Walmart is entitled to a protective order that gives it the authority to redact confidential business information and what ought to be done (if anything) about Walmart engaging in unilateral self-help rather than coming to the Court for relief.

As to Walmart's entitlement to a protective order shielding trade secret information, Walmart bears the initial burden of proving that the information it has redacted from the non-spreadsheet documents[1] falls under Federal Rule of Civil Procedure Rule 26(c)(7) and that

---

[1] The parties agreed in their moving papers and at the motions hearing that Walmart's redactions to the spreadsheet documents are not at issue. (*See* Pls.' Mem. Opp'n Mot. Protective Order at 2–3.) Counsel for Plaintiffs noted at the motions hearing that Plaintiffs may wish to see some portions of the spreadsheet files at a later date, but that they do not object to the redactions currently (except insomuch as Walmart made them unilaterally).

9

disclosing it would harm Walmart's proprietary interest in the information. *In re Remington Arms Co., Inc.*, 952 F.2d at 1032. Walmart's moving papers do not explain why it redacted specific information in the *non-spreadsheet* documents, and without such a description, or the unredacted documents, the Court does not have the information it needs to assess the correctness of Walmart's argument that pricing and sales information related to products other than Ultra Duster is commercially sensitive information covered by Rule 26(c)(7). Plaintiffs claim that "it is extremely unlikely that any of these [non-spreadsheet] redactions redact proprietary or commercially sensitive data." (Pls.' Mem. Opp'n Mot. Protective Order at 3.) Missing from Plaintiffs' argument is any showing that commercially sensitive information is relevant and necessary. Plaintiffs simply seem to be demonstrating skepticism that Walmart is redacting only confidential business information instead of "information that it simply doesn't want Plaintiffs to see." (*Id.*)

Walmart must show that it is redacting confidential business information—not just information it would rather Plaintiff not see. Walmart claims that its redactions are of confidential and trade secret information, the disclosure of which would harm the company. Plaintiffs have not chosen to show this information is necessary to pursue their case. The Court will resolve this issue with a protective order that allows Walmart to redact commercially sensitive and trade secret information from its productions of otherwise responsive documents. For each document Walmart redacts, it will submit an unredacted copy to the Court for *in camera* review together with a short (no more than a paragraph)

---

This order addresses only disputes presently before the Court, not those which may arise in

explanation of why the redacted information is a trade secret or is otherwise commercially sensitive. This compromise will ensure that Walmart's trade secret information—and only that information—is withheld from Plaintiffs.

Because the Court is granting Walmart's motion for a protective order, the expectation may be that Walmart will receive an award of costs and fees. *See* Fed. R. Civ. P. 26(c)(3) (citing Fed. R. Civ. P. 37(a)(5)). No such award will be made. Walmart redacted information without a court order allowing it to do so, in clear violation of authority prohibiting the practice. *See, e.g.*, *Target Corp.*, 576 F. Supp. 3d at 620. To award costs for the belated motion would be to reward a party that engaged in self-help and unnecessarily burdened the parties and the Court. Further, Plaintiffs' response to the unilateral redactions "was substantially justified." *See* Fed. R. Civ. P. 37(a)(5). Plaintiffs attempted to remedy the dispute without the court's intervention and then ultimately brought a motion to compel. (Bland decl. ¶¶ 17–18, Pls' Mot. Compel at 1.)

### B. Plaintiffs' Motion to Compel Discovery and for Sanctions

Plaintiffs' motion to compel is twofold; Plaintiffs seek the 4,141 documents they allege were produced in the *Kelley* case but not in this case, and they seek unredacted copies of the documents Walmart produced with redactions. (Pls.' Mem. Supp. Mot. Compel at 1, 5.) Because the Court has already addressed the redaction issue above in Section II.A., Plaintiffs' motion as to the redacted documents is denied as moot. This leaves the dispute about which of the documents Walmart produced in the *Kelley* case it must produce in this

---

the future.

case.

To support their claim that 4,141 *Kelley* documents are missing from Walmart's productions, Plaintiffs submitted a declaration from an ediscovery project manager describing how Plaintiffs compared Walmart's productions in *Kelley* with its productions in this case using MD5 hash values[2] and keyword searches. (Knudson Decl., Dkt. No. 151). A fraction of these *Kelley* documents are documents from yet another case, *Grieco*, and Plaintiff argues that because these documents were produced in *Kelley*, "a request for all documents produced in *Kelley* obviously include[s] all *Grieco*-related documents produced in *Kelley*." (Pls.' Mem. Supp. Mot. Compel at 9.) Walmart argues that another portion of this Court's order excludes them from any duty to disclose the *Grieco* documents (Walmart's Mem. Opp'n Mot. Compel at 11; Pls.' Mem. Supp. at 9.) Plaintiffs also seek sanctions on Walmart. (Pls.' Mem. Supp. Mot. Compel at 1.)

Walmart criticizes Plaintiffs' methodology for determining whether Walmart has met its discovery obligations, arguing that Plaintiffs' keyword search of a list of the *Kelley* productions which have allegedly not been produced in *Chairez* is unreliable and that their comparison of documents based solely on MD5 hash values is misguided. (Walmart's Mem. Opp'n Mot. Compel at 4, 10, 17–22.) Walmart represents that it individually reviewed the 4,141 documents Plaintiffs identified as missing and found no erroneous omissions. (Walmart's Mem. Opp'n Mot. Compel at 13.) Walmart "determined that 482 documents

---

[2] An MD5 hash value is metadata associated with an electronic document which can act as a kind of fingerprint; two documents with an identical MD5 hash value will be identical,

12

were duplicates; 6 were unaccounted for as they had non-standard bates number[s]; 2,726 were documents from a different lawsuit, (*Grieco* . . . ); 276 were generally not responsive; 447 were previously produced or logged; and 204 will be produced." (Schmidt Decl. ¶ 19, Dkt. No. 169.)

At the previous motion to compel hearing, this Court found that information about other kinds of "canned air" was indeed relevant to the case, but that ordering Walmart to produce information about these other products would not be proportional to the needs of the case. (Tr. at 31:18–32:2.) The Court then limited the discovery timeframe to the years 2008 through 2018 (Tr. at 32:22–23) with one exception, which is not in dispute[3] (Tr. 32:24–33:5). Turning to the particular interrogatories and requests for production at issue, the Court ruled that Walmart would answer Plaintiffs' interrogatories nine and 11—which asked defendants to share any knowledge they had about "any person allegedly sustaining injuries as a result of inhaling Ultra Duster, Similar Products, or any ingredient found therein"—but that their answer would be limited to the "timeframe of 2008 to 2018, [and] limited to Ultra Duster."

---

however the fact that two documents do not have the same MD5 hash value does not mean that they are necessarily dissimilar. (Knudson Decl. ¶ 9; Burns Decl. ¶¶ 3–4, Dkt. No. 161.)
[3] The exception applies to complaints about Ultra Duster specifically:

> So I'm going to limit the timeframe of discovery to the frame 2008 to 2018. Walmart's motives for selling Ultra Duster are relevant and, therefore, Walmart's profit data, not just its sales data, is going to be produced. As is discovery about other complaints, injuries or incidents Walmart has received specifically related to Ultra Duster. And those should be produced. And those should be produced even if they are outside of the 2008 to 2018 timeframe.

(Tr. 32:24–33:5)

(Tr. at 34:6–21; Brandt Decl. Ex. A at 17, Dkt. No. 113-1.) The Court observed that interrogatories nine and 11 were very broad and ordered the parties to meet and confer regarding the level of specificity required in the productions, given the Court's order. (Tr. at 34:6–21.) Once Plaintiffs received answers to interrogatories nine through 11[4] they could seek publicly available information about the injuries Walmart described in their answers. (Tr. 36:19–37:12.)

As the Court concluded its ruling from the bench, counsel for Walmart asked for clarification on the Court's ruling on Request for Production 34, which is the subject of this motion to compel, and the following exchange occurred:

> **THE COURT:** And I believe that that runs the table. Ms. Schmidt, do you agree or is there anything left unaddressed?
> **MS. SCHMIDT:** I agree, Your Honor.
> **MS. BRANDT:** Are you denying their request on—document request 34, all the documents produced in the *Kelley* case?
> **THE COURT:** I have categorized Number 34 together with Number 5 as other lawsuits relating to Ultra Duster. I'm limiting that to Ultra Duster but *Kelley* involved Ultra Duster. I'm limiting it to 2008 to 2018, but I believe that's probably within the Northern District of California Judge's timeframe. If it lapses out a little bit on either side, that's fine. And I've instructed the parties to meet and confer over this—all documents, because I know people have to take certain positions in litigation and when they write and when they speak, but we all know what the plaintiffs are looking for and it's not certificates of service. So let's meet and confer and put that universal knowledge down and let's find the words to put that down in writing.

---

[4] Interrogatory Number 10 is the same as Number Nine except that it asks: "Are [y]ou aware of any person allegedly sustaining injuries after being struck by a vehicle driven by a person who was alleged to be high from inhaling Ultra Duster, Similar Products, or any ingredient found therein?" (Brandt Decl. Ex. A. at 18.)

14

**MS. BRANDT:** Okay.
**THE COURT:** Does that help with the question?
**MS. BRANDT:** Partially. And I can't find request 34. I think the request was that Walmart produce all of the documents that were produced, which is different than what are all the pleadings and—
**THE COURT:** Oh, I see. I see, yes. So your reading is that Doc 34, which I also don't have in front of me, calls for all pleadings or no, does not call for all pleadings but calls for all document production.
**MS. BRANDT:** The documents that were produced to the plaintiff—documents produced in the *Kelley* case.
**THE COURT:** Well, if they relate to Ultra Duster and they're within 2008 and 2018, yes, the documents [in] *Kelley* will need to be reproduced in this case.
**MS. BRANDT:** Okay. Thank you for the clarification.

(Tr. 39:9–41:4.)

Plaintiff argues that when this Court ordered Walmart to produce *Kelley* documents that "relate to Ultra Duster," it included documents that "generally discuss[ed] canned air" because "[a]ny document that generally discusses canned air necessarily relates to Ultra Duster because Ultra Duster is canned air." (Pls.' Mem. Supp. Mot. Compel at 11.) This is correct. (*Id.* ("Any document that discusses the category of product that Ultra Duster falls into necessarily relates to Ultra Duster.")) The Court ordered Walmart to produce the documents that it produced in *Kelley* if they (1) related to Ultra Duster and (2) fell within the timeframe of 2008 to 2018. (Tr. 40:19–21.) To be clear, "related to Ultra Duster" means either that the document is about Ultra Duster or is about all "canned air" products generally, in which case Ultra Duster would necessarily be included. The phrase does not mean documents related to other, specific canned air products; Ultra Duster is "canned air," but not all "canned air" is Ultra Duster.

The Court's order meant that, in response to Request for Production 34, Walmart did not need to disclose documents from *Kelley* if they were about other products (i.e. not Ultra Duster). It meant that Walmart did not have to disclose productions from before 2008 or after 2018, unless the exception referenced above applied. It also meant that the parties needed to meet and confer and discuss the scope of Request for Production 34, which it appears that the parties did not do.

The Court now orders Walmart to produce the documents it produced in *Kelley* if they are about Ultra Duster (not another product) or about "canned air generally," and if they fall in the timeframe of 2008 to 2018. If documents from the *Kelley* litigation that meet these requirements originated in the *Grieco* litigation, Walmart shall also produce those documents. The Court's order on the *Kelley* documents did not include an exception for documents originating in other litigation, and Walmart may not limit the Court's specific order on Response for Production 34 based on its broader finding that Plaintiffs are not entitled to "all discovery related to all legal actions related to Ultra Duster." (Tr. 37:4–8.) Whether a document produced in *Kelley* came from the *Grieco* litigation has no bearing on whether it should be produced in this case.

Plaintiff argues that if this Court restricts the scope of discovery in this case more than the court did in *Kelley*, the parties' experts will need to be deposed twice (once in *Kelley* with the documents produced in *Kelley* and once in this case with the documents reproduced in this case only), which will require the experts to remember which documents were disclosed in one case and not in another. (Pls.' Mem. Supp. Mot. Compel at 14–15.) Walmart correctly notes that *Kelley* is a separate case, with separate facts, in a separate jurisdiction

16

from this case, and decisions by the court in that case should not dictate decisions in this case. (Walmart's Mem. Opp'n Mot. Compel at 16.) Indeed, the choice to hire the same experts in the two cases was Plaintiffs' choice. While the Court recognizes that its ruling may make preparing witnesses somewhat more challenging, it is confident that the lawyers for both sides will diligently prepare themselves and their witnesses for depositions so as to not allow discovery from one case to bleed into discovery for another.

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' Motion for a Protective Order (Dkt. No. 140) is **GRANTED**, as modified. The Court will issue a protective order that allows Walmart to redact commercially sensitive and trade secret information from its productions of otherwise responsive documents. Walmart shall re-evaluate each of its redactions in the non-spreadsheet documents and remove any redactions that do not comply with this Court's order by **March 17, 2023.**

2. On or before **March 24, 2023**, Walmart shall submit to the Court all productions it chooses to redact pursuant to paragraph 15 of the amended protective order for *in camera* review. Walmart will submit (1) the original documents, (2) the redacted documents, and (3) a table listing the redacted documents by Bates number, along with an explanation of the basis for each redaction therein. The explanation of the basis for the redaction will not exceed one paragraph.

3. Plaintiffs' Motion to Compel (Dkt. No. 146) is **GRANTED IN PART AND DENIED IN PART**. Walmart shall produce the documents it produced in *Kelley* if they are about Ultra Duster (not another product), or "canned air" generally, and if they fall in the timeframe of 2008 to 2018, as described above. Walmart may redact information about other products from otherwise responsive documents if it succinctly explains that the redactions relate to other products and submits the productions for *in camera* review as described in paragraph two of this order. *In camera* review submissions shall be due **March 24, 2023**.

4. If Walmart has not already produced all documents meeting the criteria in paragraph three of this order, it shall do so on or before **March 17, 2023**. Walmart shall apply these criteria to any future productions in the *Kelley* litigation and will continue to disclose documents from *Kelley* until fact discovery closes in this case.

Date: February 17, 2023

*s/ John F. Docherty*
JOHN F. DOCHERTY
United States Magistrate Judge